IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| HIDDENITE BAPTIST CHURCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: |
| | ) |
| SOUTHERN MUTUAL CHURCH | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DAMAGES

Plaintiff, HIDDENITE BAPTIST CHURCH ("Hiddenite Church") by and through the undersigned counsel, files this Complaint for Damages against Defendant, SOUTHERN MUTUAL CHURCH INSURANCE COMPANY (Southern Mutual), and as grounds therefore, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. The amount in controversy in this action exceeds the sum of seventy five thousand ($75,000.00) dollars, exclusive of pre-judgment interest, court costs, and attorney fees.

2. At all times relevant hereto, Hiddenite Church was and is a church in the State of North Carolina.

3. At all times relevant hereto, Hiddenite Church was and is the owner of the real property located 250 Hiddenite Church Road, Hiddenite, Alexander County, North Carolina, 28636.

4. Upon information and belief, at all times relevant hereto, Southern Mutual was and is a foreign corporation authorized to do business in the State of North Carolina.

5. At all times relevant hereto, Southern Mutual is an insurance company headquartered and domiciled in South Carolina.

6. The requirements for property diversity are met in this matter because the parties are domiciled in separate states and the amount in controversy exceeds $75,000.00.

**STATEMENT OF CLAIM**

7. Inherent in any policy of insurance issued to insure against casualty or catastrophic loss is the premise that the insured's claim is paid promptly, so that the insured may mitigate its damages and be restored to its pre-loss position as quickly as possible.

8. In consideration of the premiums paid to it, Southern Mutual issued a Special Multi-Peril Insurance Policy, Policy No. SMP 0063889 00 ("the Policy"), to Hiddenite Church insuring the real property at 250 Hiddenite Church Road, Hiddenite, Alexander County, North Carolina 28636 and other church buildings.

9. Insurance Companies, while engaging in the business of insurance in the State of North Carolina, are required to follow and comply with North Carolina General Statutes and the rules, regulations and procedures promulgated by the North Carolina Department of Insurance.

10. The subject Policy issued by Southern Mutual was in full force and effect at the times material hereto. The Policy is attached hereto as Exhibit "A".

11. The Policy covers loss caused by wind, hail and the ensuing loss as a result of these perils.

12. On or about August 14, 2011, August 18, 2011, and July 27, 2012, Hiddenite Church's insured property sustained significant damages resulting from wind and hail and the ensuing loss caused as a result of the wind and hail damage to the property.

13. The damages were timely reported to Southern Mutual, and Hiddenite Church mitigated its loss.

14. In response, Southern Mutual, through its representatives, purported to investigate and adjust the insurance claim.

15. Southern Mutual recognized the validity of the claim for location one, building one, and admitted coverage; however, Southern Mutual and its agents and representatives failed to properly investigate and adjust the claim, and refused to pay the full value of the damages sustained.

16. Hiddenite Church has cooperated with Southern Mutual in the investigation, has provided all documentation supporting its claim, and allowed for all inspections.

17. Southern Mutual rejected and ignored documentation and communications, choosing instead to hide behind the palpably incorrect and unsupported statements and opinions of themselves, and some of their agents and representatives.

18. Wind and hail severely damaged the insured property and adversely affected Hiddenite Church, causing substantial hardship.

19. Southern Mutual, however, refused to tender the full amounts due and owing under the Policy, despite knowing that it was legally and contractually required to do so.

20. Hiddenite Church has repeatedly requested that Southern Mutual pay the damages; Southern Mutual, however, has failed and/or refused to do so, despite the substantial evidence supporting Hiddenite Church's claims for coverage and benefits under the Policy.

21. Hiddenite Church complied with all obligations and conditions under the insurance contract or, alternatively, was excused from doing so by the actions of Southern Mutual and/or its agents and representatives.

22. Southern Mutual's refusal to pay all benefits due under the Policy is a breach of the insurance contract. The denial letter is attached hereto as Exhibit "B".

23. Due to the inadequate investigation and adjustment of the claim by Southern Mutual, Hiddenite Church has been unable to properly repair the property.

24. Due to the inadequate investigation and adjustment of the claim by Southern Mutual, Hiddenite Church was forced to hire a public insurance adjuster and attorneys to represent its interests and to attempt to reach a fair settlement.

25. As a further direct result of the aforementioned conduct of Southern Mutual as well as its agents and representatives, Hiddenite Church is obligated for payment of attorney's fees and costs associated with this action, and Hiddenite Church seeks reimbursement of such fees in this instance.

## COUNT I - BREACH OF CONTRACT

26. Hiddenite Church re-alleges Paragraphs 1-25 as if fully set forth herein.

27. This is an action against Southern Mutual for breach of an insurance contract, the Policy that was in effect at the time of the loss, for damages caused by wind/hail.

28. On or about August 14, 2011, August 18, 2011, and July 27, 2012, Hiddenite Church's insured properties sustained direct physical damage caused by wind/hail and ensuing damages as a result of wind/hail.

29. Hiddenite Church timely reported the damage to Southern Mutual and allowed for all inspections.

30. In response to Hiddenite Church's submission of its insurance claim, Southern Mutual sent and/or assigned various insurance adjusters and/or representatives to inspect, investigate, provide a coverage opinion, and evaluate the extent and nature of the claimed damages, but failed to properly evaluate the claim.

4

31. Hiddenite Church suffered a substantial loss to their insured property and continues to suffer the loss.

32. Southern Mutual has failed and/or refused to tender all owed insurance proceeds, undisputed or otherwise, that are due and owing to Hiddenite Church.

33. Hiddenite Church has submitted their damage estimates to Southern Mutual which total $240,992.61; however, Southern Mutual has refused to pay all owed insurance benefits. Southern Mutual has only paid $25,199.72.

34. Hiddenite Church has repeatedly requested that Southern Mutual pay its damages. Southern Mutual has failed and/or refused and continues to refuse to pay the full damages, despite knowing it is required to do so.

35. On May 21, 2013, Robert L. Wright, P.E., engineer with Robert L. Wright & Associates, Inc., issued a "Report of Site Observations and Phase 1 Structural Evaluation for Damages Due to Hail & Wind" wherein he opined that the wind and/or hail events on August 14, 2011, August 18, 2011, and July 27, 2012, caused major damage to the insured property. Wright's report is attached hereto as Exhibit "C".

36. Hiddenite Church has performed all those things properly required of it under the Policy, or alternatively, it has been excused from performance of the acts due to the representations, omissions, and/or conduct of Southern Mutual.

37. Notwithstanding the foregoing, Southern Mutual has failed and/or refused to provide full coverage under the Policy for the damages to Hiddenite Church's insured property and has failed to promptly pay all amounts due, thereby breaching its contract of insurance.

38. As a direct result of Southern Mutual's breach of its insurance contract, Hiddenite Church has lost benefits of the insured properties, and continues to suffer the loss.

**WHEREFORE**, the Plaintiff, HIDDENITE BAPTIST CHURCH, requests this Court enter an award for payment by the Defendant, SOUTHERN MUTUAL CHURCH INSURANCE COMPANY, of compensatory damages, prejudgment interest, costs of this action, attorney's fees and costs, and any other relief this Court deems appropriate.

### COUNT II - VIOLATION OF STATUTORY PROHIBITION AGAINST UNFAIR AND DECEPTIVE TRADE PRACTICES BY SOUTHERN MUTUAL CHURCH INSURANCE COMPANY

39. Hiddenite Church re-alleges Paragraphs 1-38 as if fully set forth herein.

40. North Carolina General Statutes §75-1.1 establishes that the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices by Southern Mutual were unlawful in this claim.

41. North Carolina General Statutes §75-16 creates a cause of action to redress injuries caused by these violations and provides that damages shall be trebled.

42. North Carolina General Statutes §75-16.1 further provides for the recovery of attorney's fees when there has been a violation of §75-1.1.

43. North Carolina General Statutes §58-63-15(11) outlines the specific unfair and deceptive acts of an insurance company, and this section has been violated by Southern Mutual as pled herein.

44. North Carolina General Statutes §58-63 outlines the unfair and deceptive acts of an insurance company. Many sections of this statute have been specifically violated by Southern Mutual with respect to Hiddenite Church' claim.

45. Hiddenite Church timely notified Southern Mutual of the covered damages to its insured property, and filed a claim pursuant to the terms and conditions of the Policy.

46. In response, Southern Mutual sent untrained or improperly trained adjusters/representatives to investigate and adjust the claim.

47. Despite the obvious and severe damage that had occurred at the property, Southern Mutual failed and/or refused to adjust the claim in accordance with its legal requirements, and refused to provide full indemnification as required by the Policy.

48. In fact, the claim was denied immediately on site.

49. Instead of providing indemnity, Southern Mutual disregarded its obligations to Hiddenite Church by not attempting in good faith to effectuate prompt, fair and equitable settlement of claims when liability had become reasonably clear. Southern Mutual attempted to close the claim for an amount exponentially less than what is truly owed to Hiddenite Church.

50. North Carolina General Statutes §58 outlines the unfair and deceptive acts of an insurance company. Many sections of this statute have been specifically violated.

51. Southern Mutual has failed to properly adjust and pay the claim, forcing Hiddenite Church to retain the services of a public insurance adjuster and a forensic engineer to represent its interests in the claim process and present the scope and severe extent of the damages. A complete inspection of the property was never performed by Southern Mutual.

52. Southern Mutual had actual and/or constructive knowledge of Hiddenite Church's damages, yet it unfairly, unlawfully and, in bad faith, failed to settle promptly and to pay the claim in violation of North Carolina common law and N.C.G.S. § 58-63. The factually specific violations are outlined herewith in great detail, and correspond to the following provisions:

    a. N.C.G.S. §58-63-15(11) b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

b. N.C.G.S. §58-63-15(11) c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   c. N.C.G.S. §58-63-15(11) d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   d. N.C.G.S. §58-63-15(11) f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

   e. N.C.G.S. §58-63-15(11) g. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts of damage and the amounts listed on the inventories;

   f. N.C.G.S. §58-63-15(11) h. Attempting to settle a claim for less than the amount to which a reasonable person would have believed he was entitled.

53. Southern Mutual's above-described conduct, all in violation of N.C.G.S. §58-63, was unfair, unscrupulous, immoral, and injurious to consumers, and therefore offended the public policy standards established by N.C.G.S. §75-1.

54. The conduct of Southern Mutual described above was not based upon honest disagreement or innocent mistake.

55. The above-described conduct of Southern Mutual was committed intentionally, willfully, and with malice and bad faith toward Hiddenite Church.

56. Southern Mutual's actions were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of Hiddenite Church's rights.

57. As a proximate result of Southern Mutual's conduct, Hiddenite Church is obligated for attorney's fees and costs associated with this action, and North Carolina General Statutes Chapter 75 and Chapter 58 provide for the recovery of such expenses.

58. At the initial inspection of the loss by Southern Mutual's representative, W T Brown of P&C Claim Service, Hiddenite Church had a representative from its general contracting company, Patti Talley of Fat Ox Construction, at the loss site.

59. After the initial denial, Hiddenite Church called Southern Mutual to get additional assistance and to register their concern about an improper claim denial. In response, Southern Mutual sent the same adjuster back out to the property. However, instead of showing up at the coordinated date and time that was facilitated by Patti Talley of Fat Ox Construction, Mr. Brown showed up on the wrong day, which was the only day of the week that Ms. Tally advised she was not available. The church is unlike another business or a residential claim; a coordinated visit is essential and having a meeting with the contractor about the damages was the entire purpose of the re-inspection.

60. At the second visit, Mr. Brown admitted there was covered damage and approved a tarp for part of the roof. Mr. Brown also stated he would be sending an engineer to the property.

61. When the engineer came to inspect, Hiddenite Church had Ms. Talley along with the president of Fat Ox Construction, Van Estes, at the property. The roof was inspected by John H. Miller, P.E., but Mr. Miller did not conduct a thorough and adequate evaluation. Instead, he just looked flippantly at some of the damages, lifting a shingle here or there. A thorough investigation would have resulted in a full evaluation of the particular slopes of the roof and would have required much more than just a general overview. When Fat Ox showed Mr. Miller the visible damage to the roof, specifically showing him where

shingles had been broken by the wind, he stated that the tabs were loose because they were never installed properly. This was an outcome orientated inspection, and this is not the type of expert that an insurance company should allow to be its representative.

62. In addition, Hiddenite Church's representatives showed Mr. Miller pictures of the underside of the loose and broken tabs that clearly demonstrated remnants of the below shingles stuck to the upper shingle where wind had pulled them apart and broken the seal. Mr. Miller ignored this obvious damage, but did approve some of the slopes for repair.

63. When Mr. Brown sent the check and the scope of damage to Hiddenite Church showing what Southern Mutual considered for the claim and the roof area to be repaired, the scope failed to include slopes that were severely damaged; however, it did include slopes that were not as severely damaged. Some of the slopes of Hiddenite Church's roof were so badly damaged that the wood sheathing below was visible, but the adjuster did not allocate payment for this damage.

64. Hiddenite Church's own experts did a very thorough investigation of each slope of the roof, and documented each and every wind damaged shingle tab. This information was provided to Southern Mutual, but this did not remedy its improper investigation. Hiddenite Church sent photos of the damage to Southern Mutual and gave explanations in order for Southern Mutual to take a fair review of the problem areas, but Southern Mutual did not respond with proper indemnification. In fact, at the re-inspection, Mr. Brown indicated that there was no hail damage to these shingles and the insurance company would not be paying any more money on this claim. At this point in time, Hiddenite Church had been asking Southern Mutual to take a fair and adequate evaluation of the claim that it believed was caused by wind. Southern Mutual did not have the same peril in mind when it looked at the damage, and either knew the damage

was worse or ignored the wind damage. Hiddenite Church has relied on its insurance company, but these professionals have offhandedly denied the claim and improperly evaluated the loss as evidenced by the failure to tender the proper amount to return the property back to its pre-loss condition.

65. Turning to the interior of the property, this portion of the claim was also improperly and inadequately adjusted. Mr. Brown was quick to blame an AC line as a basis for the water intrusion when he learned the plumbing configuration of the building, but this is an inaccurate conclusion as the leak only happened when it rained at Hiddenite Church. Mr. Miller was advised of this fact, but did not evaluate the damages in a fair manner. If he would have done a proper inspection, Mr. Miller would have noted that the water was infiltrating from the roof and was causing staining on the top of the AC unit in the attic and below. Even when these details were shown to Southern Mutual, it still failed to properly adjust the claim.

66. At all times material, the public adjuster attempted to work with Southern Mutual and its agents and representatives; however, Southern Mutual continued in its refusal to pay all amounts due and owing under the Policy, locked in on an improper decision for this claim, and refused to review the matter. Hiddenite Church and its representative attempted to show the damages to Southern Mutual, but it refused to truly evaluate the loss.

67. Southern Mutual misrepresented pertinent facts and insurance policy provisions applicable to Hiddenite Church's claim. These misrepresentations include, but are not limited to, the nature and extent of Hiddenite Church's damages, the coverage afforded by the insurance contract for those damages, and the nature and requirements of the payment provisions in the insurance contract.

68. Southern Mutual failed to acknowledge and act reasonably and promptly upon communications with respect to the claim arising under the Policy at issue. These failures include, but are not limited to, failing to promptly acknowledge the demand for evaluation and payment, and failing to promptly and reasonably act upon being provided with information relating to the true nature and scope of the damages.

69. Southern Mutual's representatives refused to discuss the scope of damage with Hiddenite Church when onsite.

70. Southern Mutual failed to send a properly trained adjuster to handle such a severe loss.

71. Southern Mutual's representative failed to inspect the entirety of the property and never inspected the attic.

72. Hiddenite Church's calls by representatives of the Hiddenite Church were not responded to because the callers were not church members.

73. Southern Mutual also failed to properly respond when Hiddenite Church submitted its engineering evaluation showing the cause and origin of the damages. Southern Mutual merely sent the same biased expert to inspect the loss again, but this expert refused to work with and look at the damages that were the source of Hiddenite Church's concerns.

74. Southern Mutual has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under its Policy. It is unknown whether Southern Mutual has even adopted any formal procedures and/or guidelines for the handling of claims. This failure is demonstrated by the following actions:

    a. Southern Mutual initially denied tarping requests, but there was wind damage to every span of the roof. The kindergarten classroom suffered water damage such that the classroom could not be used, yet Southern Mutual failed to indemnify Hiddenite Church for this damage and issue proper payment.

  b. One of the adjusters on behalf of Southern Mutual made judgments about the damages within one minute of inspecting the property.

  c. The engineer retained by Southern Mutual, John H. Miller, P.E. of Donan Engineering Co., Inc., told Hiddenite Church that he had seen enough damage and did not need to look at more areas of damage; however, the report he issued was inaccurate and downplayed the damages sustained. Mr. Miller only marked creased shingles but failed to mark other damaged shingles and evaluate the full extent of the wind and hail damage. Hiddenite Church was also told by Mr. Miller that he did not consider unsealed shingles to be wind scored shingles. Hiddenite Church had marked every single shingle with damage, but Southern Mutual did not evaluate all of these damages.

75. Southern Mutual has refused to pay the full value of Hiddenite Church's claim, and has done so without conducting a reasonable investigation based upon all available information. In fact, Southern Mutual and its agents and representatives have ignored relevant information that contradicts the minimal estimate prepared on its behalf.

76. Southern Mutual has failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, despite the fact that liability had become reasonably clear. Hiddenite Church provided additional evaluations of the damages, including an in-depth cause and origin report, yet Southern Mutual failed to conduct a proper re-evaluation of this claim. Southern Mutual sent the same engineer back out to the property instead of retaining a more experienced and unbiased expert.

77. Southern Mutual's payments of $25,199.72 when the damages exceed $240,992.61 demonstrate its attempt to settle the claim for less than the amount to which a reasonable person would have believed he/she was entitled to under the Policy.

78. Southern Mutual's conduct is inherently unfair, unscrupulous, immoral, and injurious to its insured. Further, Southern Mutual's conduct was willful, intentional, and unwarranted. It made instant decisions without a proper inspection, sent biased, untrained experts to inspect the loss, and has refused to acknowledge the extent of the damages. As a result of the damages and the length of time the roof was tarped, some members stopped going to services at the church.

79. Southern Mutual's conduct of failing to properly adjust the claim, sending biased experts and improperly trained adjusters to evaluate the loss, and not fully paying this claim constitute unfair and deceptive trade practices according to North Carolina law.

80. Southern Mutual's conduct was in or affecting commerce and these unfair and deceptive trade practices had the tendency to deceive Hiddenite Church and other similarly situated members of the public.

81. Upon information and belief, these unfair and deceptive trade practices occurred with such frequency to constitute the general business practices of Southern Mutual.

82. Southern Mutual's conduct was the proximate cause of injuries to Hiddenite Church.

83. North Carolina General Statutes §75-16 creates a cause of action to redress injuries caused by these violations and provides that damages shall be trebled.

84. North Carolina General Statutes §58 outlines the unfair and deceptive acts of an insurance company that have occurred in connection with this matter as listed above.

85. As a proximate result of Southern Mutual's conduct, Hiddenite Baptist Church is obligated for payment of attorney's fees and costs associated with this action, and North Carolina General Statutes Chapter 75 and Chapter 58 provides for the recovery of such expenses.

**WHEREFORE**, the Plaintiff, HIDDENITE BAPTIST CHURCH, requests this Court to enter an award for payment by the Defendant, SOUTHERN MUTUAL CHURCH INSURANCE COMPANY, of compensatory damages, consequential damages, treble damages, punitive damages, prejudgment interest, costs of this action, attorney's fees and costs, and any other relief this Court deems appropriate.

## COUNT III - BAD FAITH OR FAILURE TO ACT IN GOOD FAITH

86. Plaintiff incorporates paragraphs 1-85 as if fully set forth herein.

87. An insurance company such as Southern Mutual has a duty to conduct a prompt, honest and thorough investigation of facts in relation to coverages at issue at its own expense, with competent, sufficiently trained and motivated adjusters who are able to complete the aforementioned adjustment.

88. As alleged above, Southern Mutual acted in bad faith by refusing to provide Hiddenite Church with the benefits of the contract and failing to pay owed insurance benefits under the Policy.

89. Plaintiff has the right to a fair and prompt investigation, payment and/or settlement of its claim.

90. Southern Mutual failed to fully, fairly, and adequately investigate and adjust Plaintiff's claim for damages. Southern Mutual's investigation, adjustment, and delay of Hiddenite Church's claim were negligent, grossly negligent and reckless.

91. Southern Mutual's actions in failing to adequately investigate this claim and intentionally undervaluing the claim shows a clear disregard for the interests of Plaintiff.

92. Southern Mutual acted in bad faith by doing the following, among other things:

    a. Failing to deal fairly and honestly with Plaintiff's claim;

    b. Failing to adequately investigate Plaintiff's claim;

    c. Failing to promptly and fairly pay Plaintiff's claim; and

    d. Failing to give equal and fair consideration to Hiddenite Church's interest.

93. As a direct result of Southern Mutual's bad faith, Hiddenite Church lost the benefits of its Policy and continues to suffer the loss.

94. As a direct result of Southern Mutual's bad faith, Hiddenite Church has been damaged and has been aggravated by the poor adjustment of this claim. The aggravation was reasonably foreseeable in the event of such actions of bad faith.

95. As a direct result of Southern Mutual's bad faith, Hiddenite Church has suffered, and continues to suffer, financial damages.

96. Even if Southern Mutual is found to have had a reasonable basis to improperly handle and delay Plaintiff's claim, which Plaintiff contends it did not, Southern Mutual acted in bad faith by its conduct of delay in its investigation.

97. Southern Mutual has either intentionally ignored Hiddenite Church's claim, does not have enough properly trained adjusters to investigate property damage claims, or both.

98. In addition, Southern Mutual's operational goals place its financial interest above those of its customer. Southern Mutual has not shared its operational goals, claims management goals, or its training procedures with its customers.

99. As a further direct result of Southern Mutual's bad faith actions, Plaintiff is obligated for attorneys' fees and costs in connection with the prosecution of this action.

100. Hiddenite Church respectfully requests such further general or specific relief to which it is entitled to at law or in equity.

101. In North Carolina, the law implies a covenant of good faith and fair dealing in every contract. As an insurance policy is a contract, Defendant has assumed this obligation.

102. By entering into the insurance contract with Plaintiff, Southern Mutual assumed obligations to treat Hiddenite Church with the utmost good faith and fair dealing.

103. Despite the substantial evidence of extensive damage to the property, Southern Mutual has refused to acknowledge its obligations to fairly and honestly investigate the claim and refused to pay the full amounts due and owing to Plaintiff.

104. Southern Mutual breached its insurance contract with Plaintiff by failing to properly investigate and adjust the claim. Southern Mutual has also breached the insurance contract by failing to pay all amounts due and owing under the insurance contract.

105. Southern Mutual's refusal to pay the amounts due and owing to Plaintiff was a knowing, willful, and intentional refusal to pay a valid claim.

106. Southern Mutual's refusal to pay the amounts due and owing was contrary to its obligations of good faith and fair dealing, and was not based on an honest disagreement or innocent mistake.

107. Southern Mutual's conduct in this regard constituted a conscious and intentional disregard of, or indifference to, the rights of Plaintiff and Southern Mutual knew or should have known that this conduct was likely to result in damage or harm to Plaintiff.

108. Southern Mutual's conduct was aggravated conduct amounting to fraud, malice, gross negligence, insult, rudeness, oppression, and/or wanton and reckless disregard of Plaintiff's rights.

109. Due to Southern Mutual's breach of its obligations of good faith and fair dealing, Plaintiff has been damaged and continues to suffer the loss.

**WHEREFORE**, the Plaintiff, HIDDENITE BAPTIST CHURCH, requests this Court to enter an award for payment by the Defendant, SOUTHERN MUTUAL CHURCH INSURANCE COMPANY, of compensatory damages, consequential damages, punitive damages, prejudgment

interest, costs of this action, attorney fees and costs, and any other relief this Court deems appropriate.

### COUNT IV – BREACH OF FIDUCIARY DUTY BY SOUTHERN MUTUAL

110. Plaintiff re-alleges paragraphs 1-109 as if fully set forth herein.

111. In consideration for the premium paid to it by Plaintiff, Southern Mutual entered into an insurance contract with Hiddenite Church providing insurance coverage for the insured Property.

112. As Plaintiff's insurance company, Hiddenite Church placed a special confidence in Southern Mutual due to Southern Mutual's superior knowledge and experience in both the business of insurance and the adjustment and payment of claims.

113. Plaintiff's confidence in Southern Mutual resulted in domination and influence over Hiddenite Church and bound Southern Mutual to exercise the utmost good faith, loyalty, and honesty towards Plaintiff.

114. Southern Mutual was, at all times relevant hereto, in a fiduciary relationship with Hiddenite Church.

115. Southern Mutual breached its fiduciary duties and obligations to Hiddenite Church during the course of the claim submitted by Plaintiff.

116. As a result of Southern Mutual's breach of its fiduciary duties and obligations, Hiddenite Church suffered damages and continues to suffer the loss.

**WHEREFORE**, the Plaintiff, HIDDENITE BAPTIST CHURCH, requests this Court to enter an award for payment by the Defendant, SOUTHERN MUTUAL CHURCH INSURANCE COMPANY, of compensatory damages, consequential damages, punitive damages, prejudgment interest, costs of this action, attorney's fees and costs, and any other relief this Court deems appropriate.

18
Case 5:14-cv-00178-RLV-DSC   Document 1   Filed 11/03/14   Page 18 of 19

## COUNT V – PUNITIVE DAMAGES

117. Plaintiff re-alleges paragraphs 1-116 as if fully set forth herein.

118. As a direct and proximate result of the above-described willful and intentional acts of Southern Mutual, Hiddenite has suffered substantial money damages in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) and is entitled to an award of punitive damages.

119. Southern Mutual's above-described conduct, all in violation of N.C.G.S. §58-63, was unfair, unscrupulous, immoral, and injurious to consumers, and therefore offended the public policy standards established by N.C.G.S. §75-1.1.

**WHEREFORE**, the Plaintiff, HIDDENITE BAPTIST CHURCH, requests this Court to enter an award for payment by the Defendant, SOUTHERN MUTUAL CHURCH INSURANCE COMPANY, of compensatory damages, consequential damages, punitive damages, prejudgment interest, costs of this action, attorney's fees and costs, and any other relief this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, HIDDENITE BAPTIST CHURCH, demands a trial by jury on all issues so triable.

Dated this 3rd day of November, 2014.

MERLIN LAW GROUP, P.A.

/s/Nicole C. Vinson
NICOLE C. VINSON, ESQ.
North Carolina Bar No.: 44878
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692
Counsel for Plaintiff